**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

A COLE ONSTAD,
ADC #128493                                                    PLAINTIFF

V.                                        5:17CV00035-JTK

WENDY KELLEY, et al.                                          DEFENDANTS

## MEMORANDUM AND ORDER

### I.      Introduction

Plaintiff Onstad is a state inmate incarcerated at the Varner Supermax Unit (VSM) of the

Arkansas Department of Correction (ADC).    He filed this pro se 42 U.S.C. § 1983 action against

Defendants, alleging violations of his due process rights when he was transferred from the Tucker

Unit to VSM without notice or a hearing.    He asks for monetary and injunctive relief.

This matter is before the Court on the Defendants' Motion for Judgment on the Pleadings

(Doc. No. 20), and on Plaintiff's Motion for Reconsideration of this Court's May 1, 2017 Order

granting a stay of discovery (Doc. No. 26).    Plaintiff filed a response in opposition to the

Defendants' Motion (Doc. No. 24).

### II.     Amended Complaint (Doc. No. 5)

Plaintiff alleges that on September 20, 2016, he was transferred from the general population

area of the Tucker Unit to the VSM without notice and a hearing, as required by ADC policy.    He

claims the conditions at VSM are atypical and significant deprivations from those of ordinary

prison life, as follows: he is locked down twenty-three hours per day; he has no human contact; he

has one hour per day out of his cell where he remains shackled and handcuffed; he has limited

commissary and no religious services or work or educational opportunities; and he has limited

1

access to the telephone and visitation.   He states that he did not receive advanced written notification of a hearing and written reasons for his assignment to VSM, as required by ADC policy AD 14-07.   He states that he appeared before a classification committee on October 4, 2016, but received no reason for his transfer.   At the time Plaintiff filed this action on February 9, 2017, he had been housed at VSM for six months.

**III.    Judgment on the Pleadings**

The applicable standard of review on a motion for judgment on the pleadings pursuant to FED.R.CIV.P. 12(c) is the same as that on a motion to dismiss under FED.R.CIV.P. 12(b)(6).   See Shaw v. Rolex Watch U.S.A., Inc., 745 F.Supp. 982, 984 (S.D.N.Y.1990).   That is, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do....Factual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007), citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).

**A.    Official Capacity**

The Court agrees with Defendants that Plaintiff's monetary claims against them in their official capacities should be dismissed, pursuant to Will v. Michigan Dept. Of State Police, 491 U.S. 58 (1989), and Murphy v. State of Arkansas, 127 F.3d 750, 755 (8th Cir. 1997).

**B.    Respondeat Superior**

The Court also agrees that Plaintiff's claims against Defendants Kelley and Reed should be dismissed, because the claims are based on their supervisory capacities.   Supervisor liability is limited in § 1983 actions, and a supervisor cannot be held liable on a theory of respondeat

2

superior for his or her employee's allegedly unconstitutional actions.   See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994).   A supervisor incurs liability only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward the violation.   Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993).   In this case, Plaintiff alleges Defendants Kelley and Reed failed to correct the constitutional violation after the fact when they did not rule in his favor on the grievance he filed about the incident.   The Court finds that these allegations do not sufficiently allege knowledge or personal involvement so as to impose liability.

### C.     Qualified Immunity

Defendants also argue that they are protected from liability by qualified immunity. Qualified immunity shields a government official from suit in his or her performance of a discretionary function, unless the official's conduct violates a clearly established constitutional right, of which a reasonable person would have known.   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   In ruling on a qualified immunity defense, the Court must take the facts in the light most favorable to Plaintiff and determine (1) whether facts alleged or shown by plaintiff make out violation of constitutional right, and (2) if so, whether that right was clearly established at time of defendant's alleged misconduct.   Saucier v. Katz, 533 U.S. 194, 201 (2001)(overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009)).   In making these determinations, courts may "exercise their sound discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand."   Pearson, 555 U.S. at 236.   This inquiry must be undertaken "in light of the circumstances in the particular case at hand."   Id.

In <u>Sandin v. Conner</u>, the United States Supreme Court held that inmates do not possess a due process liberty interest in freedom from administrative or punitive segregation. Recognizing, however, that states may themselves create certain protected liberty interests, the Court noted that those would be "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). Therefore, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" <u>Wilkinson v. Austin</u>, 545 U.S. 209, 223 (2005) (quoting <u>Sandin</u>, 515 U.S. at 484).

In <u>Wilkinson</u>, the United States Supreme Court held that an assignment to the Ohio supermax prison imposed significant hardship, noting that placement was indefinite (unlike the thirty-day period in <u>Sandin</u>), and disqualified otherwise eligible inmates for parole consideration. 545 U.S. at 224. Finding an established liberty interest, the Court then determined what type of process is due an inmate selected for placement at the supermax unit. The Court considered the policies developed by Ohio correctional officials, which included notice of the factual basis leading to consideration for placement and a fair opportunity for rebuttal, an opportunity for the inmate to submit objections prior to the final level of review, and a short statement of reasons supporting the placement decision. <u>Id</u>. at 224-225.

In this particular case, Plaintiff alleges that the conditions to which he was transferred constitute an atypical and significant departure from those of ordinary prison life, and that he was

subjected to those conditions for six months (or more).   He also alleges that the ADC policy which requires notice and a hearing created a liberty interest in those rights prior to his transfer. Defendants dispute Plaintiff, stating that his placement in administrative segregation did not impose an atypical and significant hardship and that he did not have a protected liberty interest in avoiding that assignment.   Although Defendants claim that Plaintiff was afforded due process in the form of an initial classification hearing, Plaintiff claims that the hearing was not conducted until October 4, 2016, which was a couple of weeks after his transfer (September 20).   Defendants also claim that a pre-deprivation hearing is not a constitutional requirement, citing Jones v. Mabry, 723 F.2d 590, 594 (8th Cir. 1983). However, the Wilkinson case, decided in 2005, appears to modify that decision in situations where conditions are deemed atypical and significant. 545 U.S. at 222-224.

In light of the 2005 decision in Wilkinson, the Court finds that Plaintiff has stated a constitutional claim for relief which was clearly established at the time of his transfer in 2016.   In addition, the Court cannot find, as a matter of law based on a review of the pleadings alone, that Plaintiff's transfer did not impose an atypical and significant hardship.   A material dispute of fact exists concerning whether the conditions and the length of time of Plaintiff's incarceration at VSM constitute an atypical and significant hardship which necessitated certain due process protections. In addition, it is unclear from the record thus far as to whether certain pre-transfer procedures were required by the ADC policy.   The Court recognizes that violation of an ADC policy itself does not support a constitutional claim for relief;[1] however, in this case the policy itself may have created a liberty interest in avoiding the conditions of confinement at VSM. Therefore, a sufficient

---

[1]  Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996).

dispute of fact exists to render Defendants' Motion improper and to find that they are not entitled to qualified immunity.

**IV.    Conclusion**

IT IS, THEREFORE, ORDERED that:

1.    Defendants' Motion for Judgment on the Pleadings (Doc. No. 20) is GRANTED in part, with respect to Plaintiff's claims against them in their official capacities, and with respect to Plaintiff's claims against Defendants Kelley and Reed.

2.    Defendants' Motion for Judgment on the Pleadings (Doc. No. 20) is DENIED with respect to Plaintiff's individual capacity claims against Defendants Gibson, Washington, Ricketts, and Williams.

3.    Plaintiff's Motion for Reconsideration (Doc. No. 26) is GRANTED, and the stay of discovery is now lifted.

IT IS SO ORDERED this 10th day of May, 2017.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE