# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

A COLE ONSTAD,
ADC #128493                                                                                    PLAINTIFF

V.                                         5:17CV00035-JTK

WENDY KELLEY, et al.                                                                           DEFENDANTS

## MEMORANDUM AND ORDER

**I.      Introduction**

Plaintiff Onstad is a state inmate incarcerated at the Maximum Security Unit of the Arkansas Department of Correction (ADC). He filed this pro se 42 U.S.C. § 1983 action against Defendants, alleging violations of his due process rights when he was transferred from the Tucker Unit to the Varner Super Max Unit (VSM) without notice or a hearing. He asks for monetary and injunctive relief.

This matter is before the Court on Defendant Gibson's Summary Judgment Motion, Brief in Support, and Statement of Facts (Doc. Nos. 86-89).[1] Plaintiff filed Responses (Doc. Nos. 91-94).

**II.     Amended Complaint (Doc. No. 5)**

Plaintiff alleged that on September 20, 2016, he was transferred from the general population area of the Tucker Unit to the VSM without notice and a hearing, as required by ADC policy. He claimed the conditions at VSM were atypical and significant deprivations from those

---

[1] Defendants Kelley and Reed were dismissed on May 10, 2017, and Defendants Washington, Ricketts, and Williams were dismissed on July 5, 2017 (Doc. Nos. 28, 43). Plaintiff has never identified the originally-named Does, and they will be dismissed for failure to serve, pursuant to FED.R.CIV.P. 4(m).

1

he experienced in general population at Tucker. Those new conditions were as follows: cell confinement twenty-three hours per day with no human contact; one hour per day out of his cell in shackles and handcuffs; limited commissary; no religious services, or work or educational opportunities; and limited access to the telephone and visitation. He stated that he did not receive advanced written notification of a hearing and written reasons for his assignment to VSM, as required by ADC policy AD 14-07. He also stated that he appeared before a classification committee on October 4, 2016, but received no reason for his transfer. At the time Plaintiff filed this action on February 9, 2017, he had been housed at VSM for six months.

### III.    Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

Defendant Gibson argues he is protected from liability by qualified immunity, which shields a government official from suit in his or her performance of a discretionary function, unless the official's conduct violates a clearly established constitutional right, of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling on a qualified immunity defense, the Court must take the facts in the light most favorable to Plaintiff and determine (1) whether facts alleged or shown by plaintiff make out violation of constitutional right, and (2) if so, whether that right was clearly established at time of defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001)(overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009)). In making these determinations, courts may "exercise their sound discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand." Pearson, 555 U.S. at 236. This inquiry must be undertaken "in light of the circumstances in the particular case at hand." Id.

According to Gibson's Declaration, he was not involved in the September 20, 2016 transfer of Plaintiff to the Varner Unit (Doc. No. 88-6, p. 1). When Plaintiff Onstad arrived at Varner, the Classification Officer temporarily assigned him to administrative segregation (ad seg), and he appeared before the full Classification Committee on September 27, 2016. (Id., p. 2) The Committee did not recommend Plaintiff's release from ad seg and Gibson was not a member of the Committee at that time. (Id.) Gibson further stated that the Committee will review an inmate's assignment to ad seg every sixty days, and that the entire Committee makes a permanent assignment to ad seg. (Id.) He also noted that the Varner Unit's ad seg cells are physically located in the VSM building, and that an ad seg assignment differs from an assignment to the VSM 18-month Behavior Modification Program. (Id.)

In addition to his Declaration, Defendant provides documents to show that Plaintiff was previously housed in ad seg confinement at five different Units over the course of his ADC incarceration since 2003, and that the conditions of confinement were essentially the same as those in the VSM ad seg. (Doc. No. 88-1, pp. 9-52). Defendant also presents the Varner and East Arkansas Regional Unit ad seg policies, which provide for the following conditions and privileges: clothing, linens, bedding; access to hair care services; showers/shaves at least three times per week; food service; non-contact visits; hygiene items; mail service; legal materials and calls; personal calls and reading materials; educational programs; religious guidance; commissary; counselling; medical services; and one hour recreation per day, five days a week. (Doc. Nos. 88-8, 88-9) Prior to Plaintiff's transfer to the Varner Unit, Plaintiff was charged with a disciplinary based on a positive drug test, and his Inmate Transfer List noted precautions that he was a high escape risk, cell phone violator, and a member of a security threat group (Doc. Nos. 88-4, 88-5). Upon his arrival to Varner on September 20, 2016, he was assigned to ad seg temporarily, and on September 27, 2016, the Classification Committee met and did not change that assignment (Doc. Nos. 88-1, pp. 1,3; 88-7).

Based on this evidence, and on the clearly-established law, Defendant states that Plaintiff cannot show that his confinement imposed an atypical and significant hardship to support a due process violation, as set forth in Sandin v. Conner, 515 U.S. 472 (1995).

In Response, Plaintiff states that although the Classification Committee met on September 27, 2016, the evidence shows that he was not assigned to ad seg at that time, because the comments section of the document contains the notation, "hold over for possible assignment." (Doc. No. 91, p. 5) And, when he did appear at a thirty-second "sham" hearing on

October 4, 2016, Defendant Gibson said, "Lock him up, I got history with this one." (Doc. No. 92, p. 2)   Then, on October 11, 2016, Plaintiff claims he was officially assigned to ad seg for no reason and in violation of the ADC policy 14-07, which requires that inmates be given a meaningful hearing before the classification committee within seven days of placement, and receive twenty-four hours written notification of the hearing. He claims he received no notice prior to the hearings and did not appear before the Committee until October 4, 2016.

Plaintiff also states that his conditions of confinement in the VSM ad seg unit were more restrictive than any other in the state, and were similar to those found as atypical deprivations in Wilkinson v. Austin, 545 U.S. 209, 223 (2005).   He claims he was held in ad seg for a total of nine months with zero human contact, no privileges, no religious services and no schooling. In addition, the one-hour of outside recreation took place in a covered concrete cell that received no sun, and his solid metal cell door prevented conversation or communications with other inmates. He also ate and showered in his cell, and his visitation opportunities were rare and limited to non-contact.

In Sandin v. Conner, the United States Supreme Court held that inmates do not possess a due process liberty interest in freedom from administrative or punitive segregation. 515 U.S. at 484. Recognizing, however, that states may themselves create certain protected liberty interests, the Court noted that those would be "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause...imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.   Therefore, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the

5

language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson v. Austin, 545 U.S. at 223 (quoting Sandin, 515 U.S. at 484).

In Wilkinson, the United States Supreme Court held that an assignment to the Ohio supermax prison imposed significant hardship, noting that placement was indefinite (unlike the thirty-day period in Sandin), and disqualified otherwise eligible inmates for parole consideration. 545 U.S. at 224. Finding an established liberty interest, the Court then determined what type of process is due an inmate selected for placement at the supermax unit. The Court considered the policies developed by Ohio correctional officials, which included notice of the factual basis leading to consideration for placement and a fair opportunity for rebuttal, an opportunity for the inmate to submit objections prior to the final level of review, and a short statement of reasons supporting the placement decision. Id. at 224-225.

It is well-settled that an inmate has no constitutional right to remain in or be sent to a particular institution. Olim v. Wakinekona, 461 U.S. 238, 250 (1983); Murphy v. Missouri, 769 F.2d 502 (8th Cir. 1985). In addition, the Eighth Circuit has held in numerous cases that a transfer to segregated confinement is not an "atypical and significant hardship" which creates a protected liberty interest requiring due process. See Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010), where a prisoner was not deprived of a liberty interest during nine months in administrative segregation; Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002), where thirty days in punitive segregation and initial maximum security classification was not considered an atypical and significant hardship; and Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir. 1996), where restrictions on mail, telephone access, visitation and commissary privileges in punitive

isolation were not considered atypical and significant deprivations.

Eighth Circuit case law also provides that the "Due Process clause does not give an inmate a liberty interest in remaining in the general population," and that there is no liberty interest in assignment to a particular unit of a prison or prison classification. See Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995); Moorman v. Thalacker, 83 F.3d 970, 973 (8th Cir. 1996); and Sanders v. Norris, 153 Fed.Appx. 403, 404 (8th Cir. 2005). See also Horse v. Young, No. 4:14-CV-04137-LLP, 2016 WL 901256, at *3-9 (D.S.D. 2016).

Therefore, in applying this case law to the facts of this particular case, the Court must first determine if Plaintiff Onstad had a protected liberty interest in avoiding ad seg incarceration. And, in order to reach this conclusion, Plaintiff must establish that his conditions of confinement were atypical and significant from those of ordinary prison life. Although Plaintiff complains about his restrictive housing and lack of privileges, it is clear that he was provided food, bedding, clothing, exercise opportunities, hygiene opportunities and items, commissary, mail, telephone, legal materials, etc., albeit under more restrictions than someone incarcerated in the general population area. However, the courts have consistently held, as noted above, that such conditions, even for the alleged nine months of his incarceration in ad seg, are not considered atypical and significant deprivations to support a finding of a liberty interest. Therefore, absent such a liberty interest, Plaintiff was not entitled to any particular procedures prior to his incarceration in ad seg. Although Plaintiff claims the ADC policies required notice and a hearing prior to his transfer, violation of an ADC policy itself does not support a constitutional claim for relief. Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996).[2]

---

[2] According to the documents presented by the parties, Plaintiff was transferred to Varner on

This case differs from Wilkinson, where inmates transferred to the supermax facility in Ohio were incarcerated for unlimited durations with only annual reviews, and their placement disqualified them from parole consideration. 545 U.S. 209, 224.  In that case, the Court held that those conditions were atypical and significant, and required a review of due process procedures implemented by the prison.  However, in this case, Plaintiff's confinement was for a limited duration, and he does not deny Gibson's statement that he was entitled to a review of his confinement every sixty days.  In addition, Plaintiff does not claim that his placement in ad seg affected his eligibility for parole.

Also misplaced is Plaintiff 's argument that this Court is bound by its prior finding that Plaintiff stated a constitutional claim for relief in the Order denying Defendants' Motion for Judgment on the Pleadings (Doc. No. 28).  In that decision, this Court was limited to a review of the pleadings alone, whereas in the context of a Summary Judgment Motion, the Court can look to evidence outside the pleadings in determining if judgment as a matter of law is appropriate. FED.R.CIV.P. 56.  In the prior decision, the Court noted that Plaintiff stated a constitutional claim for relief in his Amended Complaint, and that it could not find as a matter of law, **based on a review of the pleadings alone**, that his transfer did not impose an atypical and significant hardship.  However, after reviewing all the evidence presented by both sides, the Court now can conclude that the transfer and subsequent ad seg incarceration did not violate clearly established law and that no reasonable fact finder could find that the facts alleged or shown, construed in the

---

September 20, 2016, and the first classification committee meeting was conducted on September 27, 2016 (Doc. Nos. 88-1, pp. 1-3; 88-7).  In addition, the committee met on October 4, 2016 for a "possible ad/seg assignment," and on October 10, 2016, for an ad/seg seven day review. (Doc. Nos. 94, pp. 6-7; 89-1).

8

light most favorable to Plaintiff, established a violation of a constitutional or statutory right. Therefore, Defendant Gibson is entitled to qualified immunity.

**IV. Conclusion**

IT IS, THEREFORE, ORDERED that:

1. Defendant Gibson's Motion for Summary Judgment (Doc. No. 86) is GRANTED, and Plaintiff's Complaint against him is DISMISSED with prejudice.

2. Defendant Does are DISMISSED for failure to identify and serve, pursuant to FED.R.CIV.P. 4(m).

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 26th day of January, 2018.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE